IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| K.W. MICHAEL CHAMBERS, *et al.*, ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 07-0373-WS-B |
| ) | |
| MICHAEL J. COONEY, M.D., ) | |
|     Defendant/ Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DR. EUGENE de JUAN, *et al.*, ) | |
|     Counterclaim Defendants. ) | |

**ORDER**

This matter comes before the Court on defendant SurModics, Inc.'s Motion to Dismiss (doc. 40). The Motion has been briefed and is ripe for disposition at this time.

**I.  Relevant Background.**

A detailed review of the factual underpinnings and procedural posture of this consolidated action is unnecessary to resolve the discrete issues raised in the Rule 12 Motion. In the Amended Complaint (doc. 38, Exh. 6), Michael J. Cooney, M.D. ("Dr. Cooney") brought certain claims against SurModics, Inc. ("SurModics") and others based on SurModics' acquisition of a company called InnoRx, Inc. In particular, the Amended Complaint alleges a scheme by SurModics, InnoRx and others to deprive Dr. Cooney of proceeds from that transaction and to rob him of inventorship rights for certain technologies that he had helped to innovate while working for and with InnoRx by eliminating his name from patent applications pertaining to those inventions.

The specific claims that Dr. Cooney asserts against SurModics include the following: (1) a claim for unjust enrichment on the theory that InnoRx was unjustly enriched by the value of Dr. Cooney's intellectual property and his subsequent exclusion from licensing rights for that intellectual property; (2) a claim for fraud based on InnoRx's failure to inform Dr. Cooney that his name was being removed from the '750 Patent application and that he was being deliberately

excluded from other patent applications despite his status as an inventor; and (3) a claim for breach of fiduciary duty on the ground that InnoRx owed Dr. Cooney a fiduciary duty which it breached to Dr. Cooney's detriment.  (Amended Complaint, ¶¶ 48-58.)  With respect to each of these causes of action, Dr. Cooney predicates liability for SurModics on its status as successor to InnoRx.

The Amended Complaint also includes two other causes of action that are of particular significance to the pending Motion to Dismiss.  In particular, Count IV, captioned "Correction of Inventorship," states that Dr. Cooney is a co-inventor of the '750 Patent and asks this Court pursuant to 35 U.S.C. § 256 to correct that patent to reflect his co-inventor status.  Count IV also sets forth a laundry list of 15 other pending patent applications and states that "[i]n the event that patents are issued on [those] applications and Dr. Cooney is not named as an inventor [f]or each such patent, Dr. Cooney reserves the right to amend the Complaint to add such patents to seek a correction of inventorship."  (Amended Complaint, ¶ 59.)  The relief requested by Dr. Cooney in Count IV is that he "should be declared the owner of all rights arising from his status as co-inventor of the '750 patent and the [15 other enumerated] applications (once they issue)."  (*Id.*, ¶ 62.)  Further, Count V of the Amended Complaint is captioned "Tortious Interference with Prospective Economic Advantage."  A fair reading of Count V is that Dr. Cooney alleges that SurModics had determined based on its own analysis that Dr. Cooney was entitled to inventor status on the pending patent applications, but failed either to notify the Patent and Trademark Office of that determination or to file appropriate petitions to correct ownership.  (*Id.*, ¶¶ 64-67.)  As a result of these allegedly wrongful omissions, Dr. Cooney claims, he "has been deprived the right to independently license the pending applications on which he is an inventor."  (*Id.*, ¶ 68.)

In its Motion to Dismiss, SurModics asks this Court to dismiss Count IV to the extent it seeks relief concerning pending patent applications, to dismiss Count V for failure to state a claim upon which relief can be granted, and to strike certain paragraphs of the Amended Complaint that it contends improperly recount statements made during settlement negotiations.

**II.     Legal Standard.**

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  Thus, "when ruling on a defendant's motion to dismiss, a

judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed.R.Civ.P.  While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (explaining that "factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief") (citation omitted).  The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). Thus, the proper test is whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Financial Sec.*, 500 F.3d at 1282-83 (citation and internal quotations omitted).

## III.    Analysis.

### A.    Count IV: Correction of Inventorship.

SurModics devotes nearly half of its lengthy memorandum of law in support of the Motion to Dismiss to Count IV, the claim for correction of inventorship pursuant to 35 U.S.C. § 256.  In so doing, SurModics does not allege that this cause of action fails to state an actionable claim to the extent that Dr. Cooney seeks correction of the '750 Patent to designate him as a co-inventor.  Rather, SurModics's position is that Count IV should be dismissed "to the extent it seeks an order correcting inventorship of pending patent applications."  (SurModics Brief (doc. 41), at 7.)

This is a phantom issue.  While the legal premise of SurModics' argument is correct,[1] it is

---

[1] It is an uncontroversial and well-established proposition that federal courts have jurisdiction only to correct inventorship on issued patents, not on pending patent applications.

combating claims that simply are not alleged.  Dr. Cooney emphatically states in his response brief that he "is not requesting this Court to declare him an inventor on pending patent applications" and that he "stipulates that he will not seek a correction of inventorship on any patent application until it issues."  (Cooney Response (doc. 46), at 1-2.)  Such a stipulation is fully supported by the plain text of Count IV itself, in which Dr. Cooney states that "[i]n the event that patents are issued" with respect to those 15 pending applications, "Dr. Cooney ***reserves the right to amend the Complaint to add such patents to seek a correction of inventorship*.*"  (Amended Complaint, ¶ 59 (emphasis added).)  As Dr. Cooney is not presently requesting correction of inventorship by this Court as to any of the 15 pending patent applications, SurModics' Motion to Dismiss Count IV "to the extent" that he is so requesting is **denied** as **moot**.² For the sake of clarity, the Court observes that Count IV does not read, and is not to be construed for purposes of this action, as requesting correction of inventorship as to any of the 15 pending patent applications at this time.  Rather, Count IV is confined to the '750 Patent.  If Dr. Cooney later seeks to petition the Court in this action for correction of inventorship or a declaration of ownership rights as to any patent other than the '750 Patent, it will be necessary for him to seek leave of court to amend his pleadings to do so, pursuant to Rule

---

*See, e.g., Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 (Fed. Cir. 2004) (explaining that 35 U.S.C. § 256 allows an alleged co-inventor to bring a cause of action to correct inventorship on an issued patent, but that 35 U.S.C. § 116 "plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications"); 35 U.S.C. § 116 ("Whenever through error ... an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director [of the Patent and Trademark Office] may permit the application to be amended accordingly, under such terms as he prescribes.").  Dr. Cooney does not maintain otherwise in these proceedings.

² It appears that SurModics based this aspect of the Motion to Dismiss on language in the *ad damnum* clause of the Amended Complaint, wherein Dr. Cooney requests "[a]n order correcting the inventorship of the '750 patent and the [15 pending] applications."  (Amended Complaint, at 23.)  While this inconsistency reflects poor draftsmanship, a simple telephone call between counsel would likely have resolved the discrepancy to the satisfaction of all concerned.  Indeed, it might have saved the parties (and this Court) substantial time and resources had SurModics called Dr. Cooney's counsel to request clarification before firing off a 29-page Rule 12(b)(6) Motion and brief directed in considerable part at claims that the Amended Complaint did not appear to be pursuing and that Dr. Cooney now unequivocally disavows.

15, Fed.R.Civ.P., and in conformity with the deadlines specified in the applicable Rule 16(b) Scheduling Order.[3]

### B.  *Count V: Tortious Interference with Prospective Economic Advantage.*
#### 1.  *Pleading Requirements.*

Next, SurModics contends that Dr. Cooney's tortious interference claim (Count V) is fatally infirm as presented in the Amended Complaint because it fails to plead the elements of that cause of action. SurModics' position is that Count V should be dismissed because it "does not identify a single potential business relationship involving any alleged efforts by Dr. Cooney to license the 15 listed pending patent applications." (SurModics Brief, at 24.) SurModics further maintains that Count V fails because it does not identify "any business relation that supposedly would have proceeded to some sort of binding, if not contractual, relationship *but for* the undisclosed 'interference' that Dr. Cooney attributes to SurModics." (*Id.*)

To evaluate this argument, the Court must first examine the appropriate pleading standard for a claim of tortious interference with prospective economic advantage. Although there is some question as to which state's law applies to Count V, both parties' briefs rely primarily on New York law on this question; therefore, the Court will assume (without deciding) that New York law applies.[4] Under New York law, the tort of tortious interference with

---

[3]  The foregoing also disposes of Surmodics' second argument, to-wit, that "Count IV should be dismissed to the extent it seeks a declaration that Dr. Cooney will be a co-owner of any patents that may issue from pending patent applications." (SurModics Brief (doc. 41), at 17.) As stated, Dr. Cooney has disavowed any intent to utilize Count IV as a platform for litigating patent applications other than the '750 Patent, so once again SurModics is asking the Court to slay an imaginary dragon.

[4]  This makes sense, given the fragmentary information available to the Court. Federal courts sitting in diversity generally apply the choice-of-law rules of the state in which they sit. *See Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) ("A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state."). "*Lex loci delicti* has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991). "Where as here, the injury in question is financial, the location where the financial injury was felt is determinative under *lex loci delicti*." *Chambers v. Cooney*, 2007 WL 2493682, *11 (S.D. Ala. Aug. 29, 2007). The Amended Complaint reflects

prospective economic advantage "has a limited scope," imposes "demanding" requirements on plaintiffs, and is "very difficult to sustain." *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp.2d 423, 467 (S.D.N.Y. 2006) (citations omitted). Indeed, New York law provides that "[a]llegations of tortious interference must be more than just mere suspicions, and, therefore, the complaint must allege interference with a specific identified business relationship with a third party." *American Bldg. Maintenance Co. of New York v. Acme Property Services, Inc.*, 515 F. Supp.2d 298, 316 (N.D.N.Y. 2007) (citations omitted); *see also Henneberry*, 415 F. Supp.2d at 469 (granting motion to dismiss tortious interference with prospective advantage claim where plaintiff "failed to plead adequately the first element of this claim - *i.e.*, that he had a continuing or existing business relationship with a third party with which defendant interfered"). More generally, to state a viable claim for tortious interference with prospective business relations under New York law a plaintiff "must allege the following four elements: (1) a business relationship between plaintiff and a third party; (2) that defendants, *having knowledge of such relationship*, intentionally interfered with it; (3) that defendants acted with the sole purpose of harming the plaintiff or, failing that level of malice, used dishonest, unfair or improper means; and (4) injury to the business relationship." *Zedenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp.2d 275, 280 (S.D.N.Y. 2004). "Furthermore, plaintiff must allege that defendants directly interfered with the business relationship by directing some activities towards the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff." *Id.* (citation omitted); *see also Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp.2d 157, 167-68 (S.D.N.Y. 1998) (finding that plaintiff failed to state claim for tortious interference where there was no allegation that defendants' conduct was directed towards any third party with whom plaintiff had existing or prospective business relationship).

      Count V of the Amended Complaint does not comport with these bedrock requirements under New York law. As pleaded, Count V does not identify any specific continuing or existing

---

that Dr. Cooney is a resident of New York. (Doc. 38, Exh. 6, ¶ 5.) Therefore, it appears that the injury from the alleged tortious interference would have been felt by Dr. Cooney in New York, such that New York law would apply under the *lex loci delicti* doctrine. No party has argued otherwise, at least for purposes of the pending Motion to Dismiss, so the Court will not explore that question further at this time.

business relationships with third parties with which SurModics is alleged to have interfered; rather, Dr. Cooney merely states that his right to license the pending patent applications has been infringed by SurModics' alleged wrongdoing. He does not identify specific licensees, either by name or other description. He does not state that he has a continuing or existing relationship with such licensees, or even that he has ever been in contact with any of them; rather, it appears that the relationships that have allegedly been interfered with are purely speculative and hypothetical. And he does not allege that SurModics directed any activities toward those amorphous putative licensees to convince them not to do business with Dr. Cooney. In all of these respects, Count V is inadequately pleaded under New York law.[5]

### 2. *Necessity of Proving Patent Inventorship Rights.*

Under the circumstances, any attempt by Dr. Cooney to amend Count V to correct these pleading flaws would be futile.[6] Even if Dr. Cooney were to amend his pleading to recite the

---

[5] In so concluding, the Court rejects Dr. Cooney's arguments to the contrary. Dr. Cooney relies heavily on the unpublished decision of *SLM, Inc. v. Shelbud Products Corp.*, 1993 WL 127969 (S.D.N.Y. Apr. 20, 1993), wherein the district court found that a complaint need not "identify by name the prospective business relationships that it alleges have been interfered with," as long as the complaint "sufficiently identifies the prospective business relationships as being with inventors, SLM employees, and others in the toy industry." *Id.* at *5. But *SLM* is distinguishable. The concern here is not that Dr. Cooney has failed to name prospective licensees by name, but that he has offered no description or characterization of them at all such that it is impossible for SurModics to discern anything about the relationships that it is accused of interfering with. That was simply not the case in *SLM*. *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228 (S.D.N.Y. 2002) is distinguishable for precisely the same reason, inasmuch as Dr. Cooney's Amended Complaint says nothing about the relationships allegedly interfered with. More generally, the Court finds that the *Henneberry*, *American Bldg.*, and *Zedenek Marek* line of authority discussed above accurately reflects New York law concerning pleading requirements for a claim of tortious interference with prospective economic advantage, and Dr. Cooney has unambiguously failed to satisfy the requirements identified in those authorities.

[6] The law of this Circuit is clear that a court need not *sua sponte* afford a represented party an opportunity to amend his complaint to correct deficiencies where, as here, the plaintiff has not requested leave to do so. *See, e.g., Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

technical elements of the tortious interference claim in a manner that satisfied pleading requirements imposed by New York law, this cause of action would remain subject to an insuperable defect. Count V is entirely predicated on Dr. Cooney's contention that he should have been named as co-inventor on the 15 pending patent applications. He reasons that SurModics knew he was a co-inventor for those applications, but failed to correct inventorship on those applications, resulting in a deprivation of Dr. Cooney's right to license those patent applications and constituting the tort of tortious interference with prospective economic advantage. It is abundantly clear, however, that a necessary prerequisite to an award for Dr. Cooney on Count V would be a determination by this Court that he is in fact a co-inventor for the patent applications at issue. As already discussed, *supra*, however, it is undisputed by the parties that federal courts lack jurisdiction to adjudicate inventorship rights for pending patent applications. Dr. Cooney cannot use a tortious interference claim to accomplish indirectly that which he cannot accomplish directly in a correction of inventorship claim. Therefore, even if Dr. Cooney were able to amend his tortious interference cause of action to comport with the pleading standards of New York law, Count V would still fail to state a claim on which relief can be granted because Dr. Cooney's theory of relief presupposes co-inventorship status on pending patent applications, a determination that this Court lacks jurisdiction to make. *See, e.g.,* 35 U.S.C. § 116; *Carter v. ALK Holdings, Inc.*, 510 F. Supp.2d 1299, 1304 (N.D. Ga. 2007) (construing statutory scheme as one "in which Congress intended for courts to become involved in inventorship only after the patent has issued"); *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp.2d 185, 187-88 (D. Me. 2005) (holding that "the courts may not interfere with the patent process until after the PTO has rendered a final decision on the precise nature of the patent, if it chooses to issue a patent at all" and that district courts are not empowered to determine questions of inventorship prior to patent's issuance).[7]

---

[7] In *Stevens v. Broad Reach Companies, L.L.C.*, 2006 WL 1556313 (W.D. Mo. May 31, 2006), the district court determined that these principles forbid not only direct claims to decide inventorship issues of pending patent applications, but also "state law claims that are premised on [plaintiff's] assertion that he is either the sole or joint inventor of the [technology] which the Defendants seek to patent. These claims require the Court to resolve questions of inventorship in a pending patent application before granting the relief sought ... [which] gives rise to the risk of an inconsistent determination of inventorship. As the Court has determined

In response, Dr. Cooney does not suggest that this Court can or should become involved in inventorship determinations of pending patent applications. Instead, he argues that "no judicial determination of inventorship on the pending applications is necessary" (doc. 46, at 7) for Count V because SurModics had already determined Dr. Cooney to be a named inventor, yet failed to list him in that capacity on the patent applications. This argument misses the point. Whatever it may have said or done at some other time, SurModics has plainly taken the position in this litigation that Dr. Cooney is not a co-inventor of the pending patent applications and that his name should not be listed on those applications. If Count V were to proceed, the finder of fact would necessarily be tasked with determining whether Dr. Cooney's name should have been listed on those applications, so as to trigger his licensing rights and enable him to secure economic advantage from the business relationships that SurModics allegedly interfered with. After all, unless Dr. Cooney is listed as a co-inventor, he has no licensing rights as to those pending patent applications. But the decision of whether or not Dr. Cooney is a co-inventor (and thus one whose name should be listed on the applications) is for the Patent and Trademark Office to make as to those pending applications, not for this Court or a federal jury. The Court will not overstep its jurisdictional authority and invade the province of the Patent and Trademark Office to make inventorship determinations for pending patent applications in the guise of deciding a common-law cause of action for tortious interference with prospective economic advantage.

    3.  *Conclusion.*

For all of these reasons, the undersigned finds that Dr. Cooney's claim against SurModics for tortious interference with prospective economic advantage fails to state a claim upon which relief can be granted because it does not comply with state-law pleading requirements for such claims. Even if it did, the tortious interference claim would still fail a Rule 12(b)(6) analysis because implicit in any relief that might be granted Dr. Cooney on that cause of action would be a determination by the fact-finder that he is a co-inventor or otherwise has inventorship rights in pending patent applications, and federal courts are not empowered to

---

that the PTO is the proper forum for resolving questions of inventorship in pending patent applications, these claims will also be dismissed." *Id.* at *8. The Court finds the *Stevens* reasoning persuasive, and expressly adopts it here.

make such determinations.

### C.     Request to Strike Allegations Concerning Settlement Negotiations.

Lastly, the Court turns to SurModics' request pursuant to Rule 12(f), Fed.R.Civ.P., that Paragraphs 46, 47, and 64-67 of the Amended Complaint be stricken as containing inadmissible evidence of settlement negotiations, pursuant to Rule 408, Fed.R.Evid.  In this very action, the Court has previously rejected the parties' improper attempts to extract anticipatory evidentiary rulings concerning statements in the pleadings.  Specifically, Dr. Cooney previously asked the Court to dismiss the former stockholders of InnoRx's tortious interference claim against him "because the evidence on which it is predicated consists of statements made by Dr. Cooney in settlement negotiations, which are inadmissible under Rule 408 of the Federal Rules of Evidence.  This kind of evidentiary objection is inappropriate at the Rule 12(b) stage." *Chambers v. Cooney*, 2007 WL 2493682, *12 (S.D. Ala. Aug. 29, 2007) (footnote omitted).  The parties now argue whether the statements identified in SurModics' motion to strike constitute settlement negotiations or not, with SurModics proffering extrinsic evidence in support of its position.  Again, the Court declines to make anticipatory evidentiary rulings at the Rule 12(b) stage of the proceedings based on an undeveloped factual record.

SurModics' request is governed by Rule 12(f), Fed.R.Civ.P., which authorizes district courts to "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."  *Id.*  However, "[s]triking matter on Rule 12(f) grounds is a drastic, disfavored remedy."  *English v. CSA Equipment Co.*, 2006 WL 2456030, *2 n. 5 (S.D. Ala. Aug. 22, 2006); *see also Stephens v. Trust for Public Land*, 479 F. Supp.2d 1341, 1346 (N.D. Ga. 2007) (noting that a motion to strike is a "drastic remedy" and that such motions "are rarely granted absent a showing of prejudice"); *BB In Technology Co. v. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (opining that Rule 12(f) motions "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties"); *Carlson Corporation/Southeast v. School Bd. of Seminole County, Fla.*, 778 F. Supp. 518, 519 (M.D. Fla. 1991) (characterizing motions to strike as "time wasters" and observing that such motions "will usually be denied").

SurModics' justifies its request that certain paragraphs of the Amended Complaint be stricken by arguing that the statements set forth therein constitute settlement negotiations that

-10-

would be inadmissible under Rule 408, Fed.R.Civ.P.  As noted *supra*, however, the question of admissibility is not properly before the Court; rather, the question presented by SurModics is whether those statements should be stricken from the court file in its entirety.  SurModics has made no showing to warrant such a remedy in this case.  Significantly, movant makes no showing that it would sustain any prejudice by virtue of the inclusion of those statements in the court file or that any harm will befall it unless those allegations are stricken.  Absent any evidence of prejudice, the Court declines to impose the drastic, disfavored remedy of striking the challenged allegations pursuant to Rule 12(f).  *See Evonik Degussa Corp. v. Quality Carriers, Inc.*, 2007 WL 4358260 (S.D. Ala. Dec. 13, 2007) (denying motion to strike exhibits to notice of removal where movant alleged that exhibits constituted settlement negotiations that were inadmissible under Rule 408).  The Motion to Strike is **denied**, subject to SurModics' right to challenge admissibility of these statements at an appropriate juncture.

### IV.     Conclusion.

For all of the foregoing reasons, it is **ordered** that SurModics' Motion to Dismiss and to Strike (doc. 40) is **granted in part**, and **denied in part**.  The Motion to Dismiss is **granted** with respect to Dr. Cooney's claim for tortious interference with prospective economic advantage, and Count V of his Amended Complaint is **dismissed** pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The Motion to Dismiss is **denied** as **moot** with respect to Count IV of the Amended Complaint because the Motion hypothesizes that Dr. Cooney is bringing claims that he is unequivocally not bringing in these proceedings.  The Motion to Strike is **denied**, with the proviso that SurModics may litigate the admissibility of the challenged statements at an appropriate time.  SurModics is **ordered** to file an answer to Dr. Cooney's Amended Complaint on or before **February 4, 2008**.

DONE and ORDERED this 23rd day of January, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE