**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**K.W. MICHAEL CHAMBERS, *et al.*,** )
**Plaintiffs,** )
)
**v.** ) **CIVIL ACTION 07-0373-WS-B**
)
**MICHAEL J. COONEY, M.D.,** )
**Defendant/ Counterclaim Plaintiff,** )
)
**v.** )
)
**DR. EUGENE de JUAN, *et al.*,** )
**Counterclaim Defendants.** )

**PUBLISH**

**ORDER**

This matter comes before the Court on defendant Johns Hopkins University's Motion to Dismiss Counter-Claim (doc. 34).

***A. The Necessity of Ruling on the Motion to Dismiss.***

After the Motion was briefed, the Court entered a Show Cause Order (doc. 65) directing Johns Hopkins to show cause why the Motion to Dismiss had not been rendered moot by the consolidation of this action (the "*Chambers* Action") with a separate lawsuit filed by Michael J. Cooney, M.D., against Johns Hopkins and others (the "*Cooney* Action"). Dr. Cooney's direct claims against Johns Hopkins in the *Cooney* Action are identical to his *Chambers* Action counterclaims against Johns Hopkins that are the subject of the Motion to Dismiss. Thus, the nub of that Show Cause Order was the following:

> "Because of the consolidation and the resulting *Chambers/Cooney* Action, however, Dr. Cooney's claims against Johns Hopkins originally asserted in the *Cooney* Action have been properly joined in this case, and appear entirely redundant of the Counterclaim originally interposed in the *Chambers* Action. As such, it appears that Dr. Cooney's claims against Johns Hopkins in this consolidated action will remain exactly the same regardless of whether the Motion to Dismiss is granted or denied. ... If Dr. Cooney's direct claims for unjust enrichment, fraud, and correction of inventorship have been properly joined against Johns Hopkins (which they have, given that Johns Hopkins filed an Answer), then what possible difference does it make whether Dr. Cooney could

> also join those claims against Johns Hopkins as a counterclaim rather than as a direct claim?"

(Doc. 65, at 3.) Johns Hopkins has now filed a response to that Show Cause Order. (*See* doc. 70.)[1] Although he was given the opportunity to respond, Dr. Cooney elected not to be heard with respect to issues raised in the Show Cause Order.

The crux of Johns Hopkins' response is that, under Alabama law, application of its statute of limitations defense may be substantially different with respect to Dr. Cooney's direct claims against Johns Hopkins, which sound in unjust enrichment, fraud and correction of inventorship (the "*Cooney* Claims"), than with respect to Dr. Cooney's counterclaims against Johns Hopkins, which also sound in unjust enrichment, fraud and correction of inventorship (the "*Chambers* Counterclaims").[2] Johns Hopkins' position is that certain of Dr. Cooney's claims against it (specifically those for fraud and unjust enrichment) are subject to a two-year limitations period and accrued in January or February 2005. The *Cooney* Action was filed on June 7, 2007, and the *Chambers* Counterclaims were filed on September 12, 2007. Both of those dates are well outside the filing deadline, if in fact Johns Hopkins is correct that those claims

---

[1] Another counterclaim defendant, Dr. Eugene de Juan, also filed a Response to Show Cause Order (doc. 72). But the Show Cause Order did not direct Dr. de Juan to respond, and Dr. de Juan has no pending motions in this action that would be implicated by this issue. To be sure, Dr. de Juan may be situated similarly to Johns Hopkins in the sense that he is a named defendant with respect to Dr. Cooney's direct claims and is also a counterclaim defendant with respect to Dr. Cooney's counterclaims. At the moment, however, Dr. de Juan is merely an interested bystander as to the legal issues between Dr. Cooney and Johns Hopkins concerning (a) whether Johns Hopkins' Motion to Dismiss is moot, and (b) if not, whether the counterclaim may be properly asserted against Johns Hopkins in this matter.

[2] Johns Hopkins maintains that the *Cooney* Action and *Chambers* Action also include causes of action against it for breach of fiduciary duty. (Doc. 70, at 5-7.) However, the Court's reading of Count III of Dr. Cooney's Amended Complaint (doc. 38, at Exh. 6) is that the breach of fiduciary duty claim is leveled solely at Dr. de Juan and SurModics. (*Id.* at ¶¶ 56-58.) Nothing in that Count can reasonably be read as asserting any sort of fiduciary relationship between Dr. Cooney and Johns Hopkins. Similarly, Dr. Cooney's Counterclaim in the *Chambers* Action interposes a breach of fiduciary duty claim solely against Dr. de Juan, and not against Johns Hopkins. (*See* doc. 21, at ¶¶ 31-33.) Thus, the pleadings reflect that no breach of fiduciary duty claim has been brought against Johns Hopkins in either action, notwithstanding Johns Hopkins' assertions to the contrary.

accrued in early 2005 and are subject to a two-year limitations period. At the time of the Show Cause Order, the Court's impression was that the *Cooney* Claims and the *Chambers* Counterclaims against Johns Hopkins were similarly situated for limitations purposes given their proximity in time and their equally problematic nexus to the alleged accrual date; therefore, the Court perceived no material differences in application of the limitations defense as to these two sets of claims that might necessitate a ruling on the esoteric procedural objections raised in Johns Hopkins' Motion to Dismiss the *Chambers* Counterclaims.

Now, however, Johns Hopkins has presented Alabama authority for the proposition that those two sets of claims may be differently situated for limitations purposes. As to the *Cooney* Claims for fraud and unjust enrichment, the statute of limitations defense is undoubtedly in play and is positioned for resolution via Rule 56 motion at an appropriate time. But the *Chambers* Counterclaims for fraud and unjust enrichment are postured differently. Under Alabama law, "all compulsory counterclaims, whether offensive or defensive, are not subject to the statute-of-limitations defense." *Exxon Corp. v. Department of Conservation and Natural Resources*, 859 So.2d 1096, 1102 (Ala. 2002) (declining to overrule that principle pursuant to stare decisis); *Romar Development Co. v. Gulf View Management Corp.*, 644 So.2d 462, 473 (Ala. 1994) ("Compulsory counterclaims for money damages are not subject to statutes of limitations ....").[3] Thus, if the *Chambers* Counterclaims are allowed, Johns Hopkins may have no statute of limitations defense against them under Alabama's *Romar* rule, whereas the *Romar* line of cases

---

[3] Johns Hopkins' argument assumes that Alabama law applies to any limitations issues pertaining to the *Chambers* Counterclaims. That assumption may be valid, at least with respect to the state-law causes of action, insofar as federal subject matter jurisdiction over the *Chambers* Action is predicated on diversity of citizenship. *See, e.g., Reisman v. General Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) ("Except in matters governed by the federal Constitution or by acts of Congress, federal courts in diversity cases must apply the law of the forum state, including its statute of limitations."). Johns Hopkins also assumes that the *Chambers* Counterclaims constitute compulsory, rather than permissive, counterclaims. Dr. Cooney has not argued otherwise, and review of Rule 13(a) does not reveal any obvious basis for rejecting the characterization of those Counterclaims as compulsory. The Court need not finally resolve that compulsory/permissive distinction today, but simply observes that there is at least a substantial likelihood that Dr. Cooney's Counterclaims are in fact compulsory counterclaims that would be exempted from any limitations defense under Alabama law by operation of the *Romar* rule.

would in no way impede Johns Hopkins' limitations defense to the *Cooney* Claims. Thus, Johns Hopkins may be able to defeat certain *Cooney* Claims on limitations grounds, but would have no such defense to parallel *Chambers* Counterclaims if they are allowed. In that scenario, whether the Motion to Dismiss those Counterclaims on technical grounds is meritorious may be the determining factor as to whether Dr. Cooney can litigate fraud and unjust enrichment claims against Johns Hopkins in these consolidated proceedings at all.

In light of the foregoing, the Court agrees that Johns Hopkins' Motion to Dismiss the *Chambers* Counterclaims against it is not of simply academic interest, and will proceed to address its merits.

***B. Merits of the Motion to Dismiss.***

*1. Relevant Background.*

Johns Hopkins' objection to the *Chambers* Counterclaims has its genesis in the structure of the *Chambers* Action itself. On May 22, 2007, Johns Hopkins and more than a dozen other plaintiffs filed a document styled "Plaintiffs' Complaint" (doc. 1) against Dr. Cooney, with the caption of the Complaint reflecting that all of these plaintiffs were proceeding "as the former STOCKHOLDERS OF INNORX, INC. by and through their STOCKHOLDER REPRESENTATIVE K.W. MICHAEL CHAMBERS." (Doc. 1, at 1.) In the "Parties" section of the Complaint, plaintiffs again identified Johns Hopkins and all other plaintiffs as "former Stockholders of InnoRx, Inc." and specified that they had designated K.W. Michael Chambers as their "Stockholder Representative" in connection with certain matters relating to the merger of InnoRx and SurModics. Plaintiffs' Complaint asserted claims of declaratory judgment and tortious interference with contractual relations against Dr. Cooney, with such claims relating to the SurModics merger and whether Dr. Cooney is entitled to certain proceeds of and assets related to that transaction. The *ad damnum* portion of the Complaint included the following statement: "Mr. Chambers, as Stockholders' Representative for the InnoRx Stockholders, prays that judgment be entered ... awarding the former Stockholders damages for Dr. Cooney's tortious interference in an amount to be proven at trial." (Doc. 1, at 22-23.) The Complaint also sought a declaration "that Dr. Cooney is not entitled to ... receive any other payment or compensation from the InnoRx Stockholders," which would of course include Johns Hopkins. (*Id.*, ¶ 65(d).)

As part of his responsive pleading in the *Chambers* Action, Dr. Cooney lodged a

Counterclaim (doc. 21) against two of the stockholder plaintiffs, Johns Hopkins and Dr. de Juan, asserting claims derived from the same series of transactions and occurrences that form the basis of the *Chambers* Complaint. Via motion filed pursuant to Rules 12(b)(6) and 12(f), Johns Hopkins now protests that the Counterclaims should be dismissed as to it, reasoning that "[b]ecause Johns Hopkins, individually, did not sue Dr. Cooney, Dr. Cooney should not be permitted to counterclaim against Johns Hopkins individually." (Doc. 34, at 6.)[4] In response, Dr. Cooney disputes this characterization of Johns Hopkins' status in this litigation and maintains that the Counterclaims comport fully with the Federal Rules of Civil Procedure.

*2. Applicable Law.*

The sole legal issue raised by the Motion to Dismiss may be summarized succinctly as follows: Is a party named as a plaintiff in its capacity as a former stockholder in an action brought by and through its stockholder representative a proper "opposing party" for purposes of Rule 13, Fed. R.Civ.P., when counterclaims are brought against it individually? Under the specific circumstances of this case, the Court answers this question in the affirmative.

Both Rule 13(a) and Rule 13(b) clearly provide that counterclaims may be asserted only "against an opposing party." Rule 13(a)(1), 13(b), Fed.R.Civ.P. For purposes of Rule 13, an "opposing party must be one who asserts a claim against the prospective counter-claimant in the first instance." *First Nat. Bank in Dodge City v. Johnson County Nat. Bank & Trust Co.*, 331 F.2d 325, 328 (10th Cir. 1964); *see also Youell v. Grimes*, 203 F.R.D. 503, 508 (D. Kan. 2001) ("The term 'opposing party' refers only to a person or entity that is *already a party* in the action when the counterclaim is asserted."). That said, the case law delineating who is and is not considered an "opposing party" under Rule 13 remains murky, prompting one prominent commentator to observe that "[t]he federal courts have not given a definitive answer to the question of who is an opposing party for purposes of a counterclaim." Wright, Miller & Kane,

---

[4] For his part, Dr. de Juan did not file a parallel motion to dismiss, but instead filed a Reply to Counterclaim (doc. 35) listing as his "Second Separate and Complete Defense" a contention that the Counterclaim should be dismissed as to him because "he is not a 'plaintiff' in this action and thus he is not an 'opposing party' pursuant to FRCP 13." (Doc. 35, at 13.) In the absence of any motion by Dr. de Juan, this Court will not take up the merits of this defense as applied to him at this time.

*Federal Practice and Procedure: Civil 2d* § 1404.

Despite this uncertainty, several reasonably clear tenets do emerge from the extant authority interpreting the "opposing party" limitation on counterclaims. "The generally prevailing, although not uniform, view is that the 'opposing party' requirement means that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity." *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 885 (2nd Cir. 1981); *see also In re Adbox, Inc.*, 488 F.3d 836, 840 (9th Cir. 2007) ("It is well-established that when a party sues in his representative capacity, he is not subject to counterclaims against him in his individual capacity."); *First Union Nat. Bank ex rel. Southeast Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp.*, 351 F.3d 810, 815 (8th Cir. 2003) ("We recognize that some courts read Rule 13 of the Federal Rules of Civil Procedure to prevent a defendant from counterclaiming against a plaintiff in a capacity different from the one in which the plaintiff initiated the lawsuit.").

However, it has also been recognized that "it will not always be wise to apply the 'opposing party' rule mechanically." *Banco Nacional*, 658 F.2d at 886. For that reason, two significant exceptions have emerged in the Rule 13 jurisprudence to the traditional rule that a counterclaim may be lodged against plaintiff only in the capacity in which the plaintiff sued. "First, if a plaintiff has sued in a representative capacity but will benefit individually from any recovery, a counterclaim may be made against the plaintiff in his individual capacity. Second, a counterclaim may be made against a plaintiff in a capacity different than that in which he sued if principles of equity and judicial economy support such a counterclaim." *Blanchard v. Katz*, 117 F.R.D. 527, 528-29 (S.D.N.Y. 1987). These two exceptions have garnered broad acceptance among federal district courts.[5]

---

[5] *See, e.g., Kreamer Sports, Inc. v. Rocky Brands, Inc.*, 2007 WL 1144865, *4 (S.D. Ohio Apr. 16, 2007) (finding, where plaintiff sued in representative capacity, that counterclaim against plaintiff personally was permissible because plaintiff would benefit personally from any recovery in case and because principles of equity and judicial economy support the counterclaim); *Banco Central de Paraguay ex rel. Banco Union S.A.E.C.A. v. Paraguay Humanitarian Foundation, Inc.*, 2005 WL 2861598, *2 (S.D.N.Y. Oct. 31, 2005) (noting the *Blanchard* exceptions to the general disallowance of counterclaiming against a plaintiff in a capacity other than that in which the plaintiff sued); *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202,

The Court's analysis of Johns Hopkins' Motion to Dismiss proceeds in recognition of the foregoing principles.

*3. Analysis.*

As an initial matter, the Court considers Johns Hopkins' contention that the "opposing party" requirement is not satisfied here because it is not a party in the *Chambers* Action.[6] By this argument, Johns Hopkins would have the Court suspend reality and rewrite the pleadings. Under any reasonable reading of the *Chambers* Complaint, Johns Hopkins is a named plaintiff. The caption of that Complaint states that the action is being brought "by and through" Chambers, as Stockholder Representative, but it lists 15 plaintiffs (including Johns Hopkins), and identifies "Plaintiffs" in the plural rather than the singular. Indeed, the very first sentence of the document styled "Plaintiffs' Complaint" begins, "NOW COME the former Stockholders of InnoRx, Inc. ...." (Doc. 1, at 1.) It is one thing to argue, as Johns Hopkins does elsewhere, that it is a plaintiff only in its "represented" or "stockholder" capacity, and the text of the Complaint certainly supports that allegation. It is quite another to assert that Johns Hopkins is not a plaintiff at all and has not sued Dr. Cooney in any capacity. The Rule 13 inquiry depends on the pleadings as they are, not as Johns Hopkins might wish them to be in hindsight; therefore, the Court will not indulge the fiction that Johns Hopkins was never a party to the *Chambers* Action before the

---

1207-08 (M.D.N.C. 1996) (similar).

[6] The briefs leave no doubt that Johns Hopkins has taken this facially implausible position. For example, in its Reply Brief, Johns Hopkins asserts that the Counterclaim "is improper because Johns Hopkins is not actually a party" in the *Chambers* Action. (Doc. 42, at 1.) In the same brief, Johns Hopkins insists that "Johns Hopkins did not sue Dr. Cooney" and that "[t]he fact that Chambers brings this action *on behalf* of other individuals, including Johns Hopkins, does not render the other individuals or Johns Hopkins parties to the action." (*Id.* at 2.) In fact, Johns Hopkins even includes as a heading in his reply brief the statement, "Johns Hopkins Did Not Sue Dr. Cooney." (*Id.*) All of these statements clash with Johns Hopkins' acknowledgment in its earlier brief of the obvious fact that "Johns Hopkins has appeared as a plaintiff in this action ... as one of the former shareholders of InnoRx ..." (Doc. 34, at 6.) and that "the Complaint is clear on its face, that Johns Hopkins is a plaintiff" (*id.* at 8). Johns Hopkins' retreat from this position to deny in its Reply Brief that it is a plaintiff at all is perplexing, to say the least.

*Chambers* Counterclaims were filed.[7] Johns Hopkins is obviously a plaintiff, and has obviously sued Dr. Cooney, albeit in its former stockholder capacity.

Next, Johns Hopkins attempts to apply the traditional "same capacity" rule to these circumstances. Movant reasons that the *Chambers* Complaint involves claims by Johns Hopkins solely in its capacity as a "former stockholder of InnoRx," not as an individual, but that "Dr. Cooney has attempted to counterclaim against Johns Hopkins, individually, rather than as a former stockholder of InnoRx." (Movant Brief (doc. 34), at 9.) Despite Johns Hopkins' efforts to shoehorn these facts into the contours of the "same capacity" requirement, that rule is ill suited to these circumstances. As Dr. Cooney's brief observes, the overwhelming majority of cases deeming the "same capacity" rule to apply involve a plaintiff suing in a representative capacity (*e.g.*, as trustee or fiduciary), who then is targeted in his or her individual capacity in a counterclaim, or the converse. *See, e.g.*, *Banco Nacional*, 658 F.2d at 886-87 ("opposing party" requirement not met where plaintiff bank sued on its own behalf, but counterclaims were directed at plaintiff in its capacity as trustee); *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1207 (M.D.N.C. 1996) ("opposing party" requirement not satisfied where plaintiff filed suit as fiduciary of company health plan, but defendant counterclaimed against plaintiff in its capacity as employer); *McMenimen v. Pietropaolo*, 2006 WL 1240483, *1 (D. Mass. May 4, 2006) ("[W]here a trustee has sued in his fiduciary capacity, it is not permissible to assert a counterclaim against him in his individual capacity."); *Chambers v. Cameron*, 29 F. Supp. 742, 744 (N.D. Ill. 1939) (rejecting counterclaim where plaintiffs sued as trustees but counterclaim

---

[7] Evidently, Johns Hopkins' intent in so arguing was to liken this action to *Youell v. Grimes*, 203 F.R.D. 503 (D. Kan. 2001), on which Johns Hopkins' Reply Brief leans heavily. In *Youell*, Mr. Youell brought an action on behalf of certain other entities, but those entities were not named plaintiffs, as the caption of the *Youell* Complaint reflected that Mr. Youell was the sole named plaintiff. *See id.* at 508 ("It is undisputed that Youell and Defendants were the only parties to this action when the Counterclaim was filed.") That is not the case here, inasmuch as plaintiffs elected to plead their Complaint as being brought by all 15 former stockholders, rather than simply by the Stockholders' Representative. Had the *Chambers* Complaint been styled as *K.W. Michael Chambers, Plaintiff, v. Michael J. Cooney, M.D., Defendant*, the *Youell* analogy might resonate. But that is not what plaintiffs' counsel did. As it stands, there are no fewer than 15 plaintiffs, among them Johns Hopkins, in the *Chambers* Action, and the suggestion that Johns Hopkins is not a party to this case is simply counterfactual.

was directed at them as individuals and as officers of another company).[8]

This case is far removed from that paradigmatic setting. There is not one set of claims brought by or against Johns Hopkins in an individual capacity and another brought by or against it in a representative capacity. Instead, Johns Hopkins is attempting to distinguish between the "represented capacity" in which it is a plaintiff in this action, and its "individual capacity" to which the Counterclaim is directed. (Movant Brief (doc. 34), at 8-9; Reply Brief (doc. 42), at 3.) It is far from clear that the onion can be sliced so finely, or that those capacities are sufficiently distinct as a matter of law for the *Chambers* Counterclaims to run afoul of the "same capacity" requirement. Johns Hopkins has failed to direct the Court to a single authority that has so held.[9] There is thus considerable doubt that the "same capacity" requirement is a sufficiently elastic concept to insulate Johns Hopkins from Dr. Cooney's Counterclaims against it in its "individual capacity," where there appears to be no meaningful difference between that capacity and the "represented capacity" in which it is a plaintiff.

The Court need not decide as a matter of law whether the capacity in which Johns Hopkins has sued in the Complaint and the capacity in which it is sued in the Counterclaims are sufficiently different that the Counterclaims deviate from the "same capacity" requirement. Even assuming that Johns Hopkins can surpass that formidable legal hurdle, its objections to the Counterclaims would still fail. As noted *supra*, the recognized exceptions to the general rule

---

[8] In this context, the rule makes perfect sense, and it is a straightforward matter to distinguish between claims brought by a plaintiff on behalf of someone else, on the one hand, and claims against that plaintiff personally.

[9] The only case cited by Johns Hopkins that falls outside the paradigmatic scenario of representative-capacity versus individual-capacity is *Youell v. Grimes*, 203 F.R.D. 503 (D. Kan. 2001), in which a defendant sought to counterclaim against entities on whose behalf the complaint was filed. As mentioned *supra*, however, Johns Hopkins' *Youell* analogy breaks down because the "represented parties" against which individual-capacity counterclaims were brought in that case were not named plaintiffs at all. The *Youell* court observed, "It is undisputed that Youell and Defendants were the only parties to this action when the Counterclaim was filed." *Id.* at 508. Thus, *Youell* involved a fact pattern in which the parties against which the counterclaim was brought were not parties to the lawsuit in any capacity prior to the filing of the counterclaim. That critical wrinkle distinguishes *Youell* and renders that case unhelpful to Johns Hopkins' position here.

provide that a counterclaim against a plaintiff in an individual capacity is permissible, even where the plaintiff sued in a different capacity, if the plaintiff "will benefit individually from any recovery" or if "principles of equity and judicial economy support such a counterclaim." *Blanchard*, 117 F.R.D. at 528-29. Both exceptions weigh in favor of allowing Dr. Cooney's Counterclaims to proceed.

With respect to the first exception, courts have explained that "[t]he rationale for allowing counterclaims against a plaintiff only in the capacity in which plaintiff sued – to prevent inequity from counterclaims made against a plaintiff in his individual capacity although the plaintiff sued in a representative capacity – does not apply in cases in which the plaintiff will personally benefit from a suit although brought in a representative capacity." *Blanchard*, 117 F.R.D. at 529. Stated differently, there is no sound basis for excluding counterclaims based on differential capacities where the plaintiff's interests in each capacity are substantially identical. *See, e.g., Banco Nacional*, 658 F.2d at 886 ("In some instances the courts have looked beyond the capacities of the parties in order to determine who were the real parties in interest ... and have allowed a counterclaim where closely similar interests were involved."); *McMenimen v. Pietropaolo*, 2006 WL 1240483, *2 (D. Mass. May 4, 2006) (observing that courts have permitted counterclaims against entities not named as parties in the lawsuit "where the interests of the parties were so closely aligned as to be virtually indistinguishable"). In this case, the Court cannot surmise, and Johns Hopkins has not identified, any material difference between Johns Hopkins' interests as an ex-stockholder of InnoRx and its interests as an individual concerning the claims at issue in these proceedings. To sharpen the point, suppose Johns Hopkins prevails at trial on its claims against Dr. Cooney. If that happens, Johns Hopkins stands to gain, *inter alia*, the following: (a) monetary damages on the tortious interference cause of action; and (b) a declaration that Johns Hopkins does not owe Dr. Cooney any other payments or compensation. Although Johns Hopkins insists that such relief would benefit it "only in its capacity as a former stockholder of InnoRx" (doc. 34, at 10), the line separating its former stockholder capacity from its individual capacity is blurred to the point of invisibility. Will Johns Hopkins receive and spend those compensatory damages only as an ex-stockholder, and not as an individual? What is the difference? Will a declaration that Johns Hopkins owes Dr. Cooney no more payments or compensation in connection with the InnoRx deal shield it from

liability only as an ex-stockholder, and not as an individual? Again, what is the difference? The Court therefore finds that the interests of Johns Hopkins in the capacity in which it has sued, and its interests in the capacity in which it has been sued, are so closely aligned as to be virtually indistinguishable, and that Johns Hopkins clearly stands to benefit in its individual capacity if it prevails on the claims asserted in the Complaint. This exception to the "same capacity" rule clearly authorizes the *Chambers* Counterclaims to proceed.

Furthermore, the Court is of the opinion that considerations of equity also warrant allowing the Counterclaims to go forward. If, as Johns Hopkins postulates, the direct claims asserted against it by Dr. Cooney in the *Cooney* Action are time-barred, then the only avenue available to Dr. Cooney to bring claims against Johns Hopkins for fraud or unjust enrichment is his Counterclaims in these proceedings. As discussed in part A of this Order, Alabama law reflects a policy determination that statutes of limitations do not bar counterclaims because "once a party files an affirmative action, he cannot thereafter profess to be surprised by or prejudiced by affirmative defenses or compulsory counterclaims that stem from that action." *Romar*, 644 So.2d at 473. Thus, Alabama law provides that when a defendant is sued, that defendant ought to be able to join its claims against the plaintiff in the suit, even if the plaintiff tarried until after defendant's limitation period expired before initiating legal proceedings. To allow Johns Hopkins to sue Dr. Cooney after the limitations period for any direct claims by Dr. Cooney had allegedly expired, then to play a "different capacity" shell game to preclude Dr. Cooney's counterclaims, would be to frustrate the sound policy objectives espoused by the Alabama Supreme Court in *Romar* and its progeny. Dr. Cooney would be effectively sealed off from bringing his claims against Johns Hopkins in <u>any</u> proceeding. More fundamentally, it would be manifestly unfair to Dr. Cooney if Johns Hopkins could rattle off claims against him that stood to benefit it individually, then shield itself behind a "same capacity" defense to prevent Dr. Cooney from returning fire by asserting claims against Johns Hopkins arising from that same set of transactions and occurrences. Johns Hopkins having elected, in its former stockholder capacity, to litigate this dispute with Dr. Cooney, equity dictates that Dr. Cooney should be permitted to join the <u>entire</u> dispute between the parties in these proceedings, rather than just the piece of it that Johns Hopkins elected to present.

***C. Conclusion.***

For all of the foregoing reasons, Johns Hopkins' Motion to Dismiss Counter-Claim (doc. 34) is **denied**. Johns Hopkins is **ordered** to file an answer to the Counterclaim by no later than **March 6, 2008**.

DONE and ORDERED this 22nd day of February, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE